Patrick Q. Hustead, Esq.
Connor L. Cantrell, Esq.
The Hustead Law Firm, *A Professional Corporation*
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
ph. (303)-721-5000
PQH@thlf.com; CLC@thlf.com
Attorneys for Plaintiff Liberty Mutual Ins. Co.


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION


| | |
|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY,** | ) Case No. CV __-___-__-___ |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| **JAMES TALCOTT CONSTRUCTION, INC.;** | ) Jury Trial Demanded ☐ |
| **TALCOTT PROPERTIES, LLC;** | ) Jury Trial Not Demanded ☑ |
| **BRADLEY B. TALCOTT;** | ) |
| **LINDA K. CARICABURU;** | ) |
| **TALCOTT CONSTRUCTION, INC.;** | ) |
| **TALCOTT HOLDINGS, INC.;** | ) |
| **TALCOTT HOLDINGS, LLC;** | ) |
| **AARON L. PERRY;** | ) |
| **AUTUMN N. PERRY;** | ) |
| **THE BRADLEY B. TALCOTT LIVING** | ) |
| **TRUST DATED JUNE 18, 2013; and** | ) |
| **THE LINDA K. CARICABURU LIVING** | ) |
| **TRUST DATED JUNE 18, 2013,** | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Plaintiff, Liberty Mutual Insurance Company ("Plaintiff," "Liberty," or "Surety"), through

its undersigned counsel, submits its Complaint against Defendants James Talcott Construction,

Inc.; Talcott Properties, LLC; Bradley B. Talcott; Linda K. Caricaburu; Talcott Construction, Inc.;

Talcott Holdings, Inc.; Talcott Holdings, LLC; Aaron L. Perry; Autumn N. Perry; The Bradley B. Talcott Living Trust Dated June 18, 2013; and The Linda K. Caricaburu Living Trust Dated June 18, 2013.

## I.    PARTIES

1.    Liberty is a company organized and incorporated under the laws of the State of Massachusetts; Liberty's principal place of business is 175 Berkeley Street, Boston, Massachusetts.

2.    James Talcott Construction, Inc. is incorporated in Montana and has a principal place of business located at 4415 River Dr. N. Great Falls, Montana 59403.

3.    Talcott Properties, LLC is a Montana limited liability corporation that, at all times alleged herein, conducted business in the State of Montana and has a principal place of business at 4415 River Drive North, Great Falls, MT 59405.  Upon information and belief, the sole manager and member of Talcott Properties, LLC is Karla Patch, an individual who resides at 329 Skyline Drive NE, Great Falls, Montana, 59404 and who has expressed an intent to remain in Montana indefinitely.

4.    Bradley B. Talcott is an individual who resides at 2801 4th Avenue North, Great Falls, MT, 59401 and who has expressed an intent to remain in Montana indefinitely.

5.    Bradley B. Talcott represents himself to be the President of James Talcott Construction, Inc. and Trustee of the Bradley B. Talcott Living Trust and Linda K. Caricaburu Living Trust.

6.    Linda K. Caricaburu is an individual who resides at 2801 4th Avenue North, Great Falls, MT, 59401 and who has expressed an intent to remain in Montana indefinitely;

7.      Linda K. Caricaburu represents herself to be Trustee of the Bradley B. Talcott Living Trust and the Linda K. Caricaburu Living Trust.

8.      Talcott Construction, Inc. is incorporated in Montana and has a principal place of business located at 4415 River Dr. N. Great Falls, Montana 59403.

9.      Talcott Holdings, Inc. a/k/a AP, Inc. is incorporated in Montana and has a principal place of business located at 4415 River Dr. N. Great Falls, Montana 59403.

10.     Talcott Holdings, LLC is a Montana limited liability corporation that, at all times alleged herein, conducted business in the State of Montana and has a principal place of business at 4415 River Drive North, Great Falls, MT 59405.  Upon information and belief, Talcott Holdings, LLC has two managers/members.  Those members are Aaron L. Perry, an individual who resides at 2826 4th Avenue North, Great Falls, MT 59401 and who has expressed an intent to remain in Montana indefinitely; and Jacquelyn Frank, an individual who resides at 4415 River Drive North, Great Falls, MT 59405 and who has expressed an intent to remain in Montana indefinitely.

11.     Aaron L. Perry is an individual who resides at 2826 4th Avenue North, Great Falls, MT 59401 and who has expressed an intent to remain in Montana indefinitely.

12.     Aaron L. Perry represents himself to be the President of Talcott Construction, Inc. and Talcott Holdings, Inc.

13.     Autumn N. Perry is an individual who resides at 3921 15th Avenue South, Great Falls, MT 59405 and who has expressed an intent to remain in Montana indefinitely.

14.     The Bradley B. Talcott Living Trust Dated June 18, 2013 is a Montana Trust (2801 4th Avenue North, Great Falls, Montana  59401) with Linda K. Caricaburu and Bradley B. Talcott as trustees, both of whom are citizens of the state of Montana and domiciled at 2801 4th Avenue

North, Great Falls, Montana 59401, and both of whom have expressed an intent to remain in Montana indefinitely.

16. The Linda K. Caricaburu Living Trust Dated June 18, 2013 is a Montana Trust (2801 4th Avenue North, Great Falls, Montana 59401) with Linda K. Caricaburu and Bradley B. Talcott as trustees, both of whom are citizens of the state of Montana and domiciled at 2801 4th Avenue North, Great Falls, Montana 59401 and both of whom have expressed an intent to remain in Montana indefinitely.

## II.    JURISDICTION/VENUE

16. Liberty hereby incorporates by reference all the allegations contained above as though set forth herein.

17. This Court has personal jurisdiction over the Defendants because the Defendants all transacted business in and around Great Falls, Montana, including, but not limited to, performing construction work in and around Great Falls and/or guaranteeing the obligations of Talcott Construction, Inc. ("TCI") for work performed in and around Great Falls.  As such, the Defendants have purposefully availed themselves of the benefits and privileges of conducting business in Montana.

18. This Court has original subject matter jurisdiction over Liberty's claims pursuant to 28 U.S.C. § 1332 (diversity) because the amount of Liberty's claims against Defendants, jointly and severally, exceeds $75,000 (Liberty seeks damages in excess of $800,000 and additional collateral in the amount of $800,000, for a total monetary demand of $1.6MM), and Plaintiff is a citizen of a different state than each of the Defendants.  As set forth above, Liberty is a citizen of Massachusetts, where Liberty is incorporated and where its principal place of business is located.

Each of the Defendants, either by virtue of domicile, place of incorporation, principal place of business, citizenship of trustees, and/or where each member of an LLC is domiciled, is a citizen of the state of Montana.

19.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Liberty's claim occurred in or around Great Falls, Montana.

20.    In addition, Liberty seeks the imposition of equitable liens on the following real properties, each of which is located in Montana:

- 215 3rd Street Northwest, Great Falls, Montana 59404, owned in whole or in part by Talcott Properties, LLC;

- 17 3rd Street Northwest, Great Falls, Montana 59404, owned in whole or in part by Talcott Properties, LLC;

- 3921 15th Avenue South, Great Falls, Montana 59405, owned in whole or in part by Autumn Perry;

- 4401 and 4415 River Drive North, Great Falls, Montana 59405, owned in whole or in part by Talcott Holdings, Inc.; and

- 2801 4th Avenue North, Great Falls, Montana 59401, owned in whole or in part by The Linda K. Caricaburu Living Trust Dated June 18, 2013.

21.    The Court's personal jurisdiction over all Defendants has also been expressly authorized by all Defendants via a General Agreement of Indemnity dated June 18, 2002[1] (paragraph 21st), a copy of which is attached as Ex. 1 and incorporated herein by reference and/or a General Agreement of Indemnity dated April 12, 2017 (paragraph 23), a copy of which is attached as Ex. 2 and incorporated herein by reference.[2]

---

[1] This agreement was executed by: James Talcott Construction, Inc.; Talcott Properties, LLC; Bradley B. Talcott; and Linda K. Caricaburu.

[2] Talcott Holdings, LLC executed the agreement on October 11, 2018.

### III.    GENERAL ALLEGATIONS

22.    Liberty hereby incorporates by reference all the allegations contained above as though set forth herein.

### A.    The Bonds

23.    Liberty, as surety, has issued at least the following construction payment and performance bonds ("Bonds") on behalf of TCI, as principal, for the following construction projects ("Projects"):

- Bond 023018322 dated May 17, 2018 in the amount of $1,263,800 to the State of Montana, Department of Transportation for Federal Aid Project No. CMDO 5299(129) Contract No. DB318 - Great Falls ADA Ramps Upgrades (the "ADA Project");

- Bond 67S201457 dated February 16, 2018 in the amount of $224,937 to City of Great Falls, Montana for the Landscaping Completion Bond West Bank Landing, Phase 1 - Great Falls, MT;

- Bond 67S201456 dated January 24, 2018 in the amount of $7,850,885 for the New Mainstay Suites/Sleep Inn & Suites Hotel - 90-Unit, 4-Story Hotel - Great Falls, MT (the "Mainstay Project");

- Bond 67S201455 dated December 27, 2017 in the amount of $189,641 for Landscaping Improvements Completion Bond for Peak Fitness / Great Falls, MT; and

- Bond 67S201454 dated September 12, 2017 in the amount of $4,264,615 for CMR Multipurposes/STEM/Track & Field Addition and Renovation, 219 2nd Avenue Northwest, Great Falls, MT ("CMR Project").

24.    Pursuant to the terms of the Bonds and prevailing law, Liberty has guaranteed that if TCI fails to take certain actions, the underlying bonded obligation will become due, and Liberty will pay the debt(s).

**B.**    **The Indemnity Agreements**

25.    As consideration for Liberty's issuance of the Bonds and other consideration, on or about June 18, 2002, James Talcott Construction, Inc.; Talcott Properties, LLC; Bradley B. Talcott; and Linda K. Caricaburu each executed a General Agreement of Indemnity in favor of Liberty ("2002 GAI").

26.    The 2002 GAI contains, in pertinent part (without waiver of any provisions or other rights or claims), the following representations and obligations:

This General Agreement of Indemnity ("Agreement") is made and entered into by the following individuals, partnerships and/or corporations, **James Talcott Construction, Inc.; Talcott Properties, LLC; Bradley B. Talcott; Linda K. Caricaburu** individually and collectively hereinafter called ("Principals"), who intend to assume the obligations of Principals, as noted in this Agreement, with respect to any surety bond, undertaking, recognizance, instrument of guarantee or other surety obligation (hereinafter called "Bonds") requested and/or issued, before or after the date of this Agreement by Liberty Mutual Insurance Company, a Massachusetts corporation, on behalf of itself and LM

. . .

WHEREAS, the Principals, in the performance of contracts and the fulfillment of obligations generally, whether in their own names solely or as co-adventurers with others, may desire, request, or be required to give or procure certain Bonds, and/or to renew, continue, extend or substitute, from time to time, the same or new Bonds with the same or different penalties, and/or conditions, as may be desired, requested or required, in the renewal, continuation, extension and/or substitution thereof; or the Principals or Indemnitors may request the Surety to refrain from canceling the Bonds; and

. . .

WHEREAS, the Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from canceling the Bonds.

. . .

NOW, THEREFORE, in consideration of the premises, and intending to be legally bound hereby, the Principals and Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

. . .

SECOND: **INDEMNITY** - The Principals and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs and expenses of whatsoever kind or nature (including, but not limited to interest, court costs and counsel fees) and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur: (1) by reason of being requested to execute or procure the execution of any Bonds; or (2) by having executed or procured the execution of any Bonds; or (3) by reason of the failure of the Principals or Indemnitors to perform or comply with any of the covenants and conditions of this Agreement; or (4) in enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Principals and Indemnitors promptly, upon demand by the Surety, whether or not the Surety shall have made any payment therefor. In the event of any payment by the Surety, the Principals and Indemnitors further agree that in any accounting between the Surety and the Principals, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety. If for any reason the Surety shall deem it necessary to set up or to increase a reserve to cover any possible liability for losses and/or fees, costs and expenses for which the Principals and the Indemnitors will be obliged to indemnify the Surety under the terms of this Agreement, the Principals and the Indemnitors will deposit with the Surety, promptly upon demand, a sum of money equal to such reserve (including any fees, costs and expenses) and any increase thereof as collateral security to the Surety for such liabilities. The Surety shall have the right to use the deposit, or any part thereof, in payment or settlement of any such liabilities for which the Principals and the Indemnitors would be obliged to indemnify the Surety under the terms of this Agreement.

. . .

THIRD: **ASSIGNMENT** - The Principals and the Indemnitors hereby consenting, will assign, transfer, pledge and convey to the Surety, and do hereby assign, transfer, pledge and convey to the Surety, as collateral security for the full performance of the covenants and agreements herein contained and for the payment of any other indebtedness or liability of the Principals and/or Indemnitors to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each contract shall become effective as of the date of the Bond covering such contract, but only in the event of: (1) any abandonment, forfeiture or breach of any contract referred to in the Bonds or of any breach of any Bond; or (2) a default in discharging any other indebtedness or liabilities incurred in connection therewith, when due; or (3) any breach of the covenants and conditions of this Agreement; or (4) any assignment by the Principals for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for the Principals whether insolvent or not; or (5) any proceeding which deprives the Principals of theuse of any of the machinery, supplies, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) the Principal's dying, absconding, disappearing, incompetency, insolvency, being convicted of a felony, or imprisoned, if the Principal be an individual: (a) all the right,title and interest of the Principals and the Indemnitors in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; (b) all the right, title and interest of the Principals and the Indemnitors in and to all machinery, supplies, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in the process of construction, in storage at the site or elsewhere, or in transportation to any and all sites; (c) all the

right, title and interest of the Principals and the Indemnitors in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) all actions, causes of actions, claims and demands whatsoever which the Principals and the Indemnitors may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer or materialman; and (e) any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Principals or the Indemnitors have an interest.

. . .

8

SEVENTH: **ADVANCES** - The Surety is authorized and empowered, in its sole discretion and without any obligation to do so, to guarantee loans, to advance or lend to the Principals any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds, and all money expended in connection with the investigation and/or in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Principals, or guaranteed by the Surety for the purposes of any such contracts, and any and all other costs and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Principals to the Surety when due, shall be presumed to be a loss by the Surety for which the Principals and the Indemnitors shall be responsible notwithstanding that said money or any part thereof should not be so used by the Principals.

...

THIRTEENTH: **SETTLEMENTS** - The Surety shall have the right, at its option and sole discretion, to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Principals and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

...

NINETEENTH: **TERMINATION** - This Agreement may be terminated by the Principals or Indemnitors upon twenty days' written notice sent by registered mail to the Surety at its home office at Interchange Corporate Center, 450 Plymouth Road, Suite 400, Plymouth Meeting, PA 19462-1644, but any such notice of termination shall not operate to modify, bar, or discharge the Principals or the Indemnitors as to the Bonds that may have been theretofore executed.

27.     The 2002 GAI has not been terminated as to the Bonds.

28.     As further consideration for Liberty's issuance of the Bonds and other consideration, on or about April 12, 2017 each of the Defendants executed a General Agreement of Indemnity in favor of Liberty (Talcott Holdings, LLC executed the agreement on October 11, 2018) ("2017 GAI").

29.     The 2017 GAI contains, in pertinent part (without waiver of any provisions or other rights or claims), the following representations and obligations:

> Indemnitors desire the Surety to execute, renew, continue, extend, replace or refrain from canceling Bonds issued on their behalf; and, at Indemnitors' request and understanding that the Agreement is executed for Surety's benefit and that Surety will rely thereupon, the Indemnitors requested Surety to execute or procure Bonds in the past and may request Surety to do so on an ongoing basis. In consideration of these promises and intending to be legally bound hereby, Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with Surety, its successors and assigns, as follows: …

[Definitions]

Events of Default: any of the following, unless waived in writing by Surety: (a) any abandonment, forfeiture or breach of a bonded contract, bonded obligation, or Bond; (b) a default by any Indemnitor or Principal in discharging any indebtedness, obligation, or liability incurred in connection with a bonded contract, bonded obligation, or Bond, when due; (c) any breach of the Agreement or Other Agreements by any Indemnitor or Principal; (d) any failure by any Indemnitor or Principal to fulfill its respective obligations to the Surety in connection with any bonded contract, bonded obligation, or Bond, including: (i) failure to provide legal representation satisfactory to the Surety in its sole judgment; (ii) the fraudulent conveyance of any one or more of Indemnitor's assets; or (iii) negligently or intentionally providing false or misleading information regarding any Principal, Indemnitor or related to any Bonds or failing to provide relevant information (including the information required in Paragraph 13. Books and Records); (e) the establishment of a Loss reserve by the Surety; (f) any assignment by any Indemnitor or Principal for the benefit of creditors, or of the appointment or any application for the appointment, of a receiver or trustee for any Indemnitor or Principal whether insolvent or not, or the actual insolvency of any Indemnitor or Principal; (g) any proceeding which deprives an Indemnitor or Principal of the ability to complete its obligations under bonded contracts or bonded obligations, or of the use of any of the machinery, supplies, equipment, plant, tools or material required therefor; (h) if any Indemnitor or Principal is an individual, his or her death, disappearance, incompetence, insolvency, conviction of a felony, or imprisonment; (i) Breach by any Indemnitor or Principal of any financial covenant required by Surety or any other creditor, unless such breach is cured or waived by surety or other creditor in writing; (j) any breach of the following general representations and warranties by any non-individual Indemnitor or Principal: (i) such Indemnitor or Principal is a legal entity duly organized and validly existing under the laws of its State of incorporation, as applicable; (ii) the execution, delivery and performance by such Indemnitor or Principal of this Agreement does not and will not conflict with or result in a breach of any other agreement or relationship; (iii) such Indemnitor or Principal has not granted, and shall not grant during the term of this Agreement, any right to any other person or entity which would conflict with the rights of the Surety under this Agreement; (iv) such Indemnitor or Principal is not aware of any action, suit, inquiry or investigation by any person or government entity that could threaten the validity of or the ability of such Indemnitor or Principal to perform under this Agreement…

Loss: any loss, fees, costs and expenses, including pre- and post-judgment interest at the maximum rate permitted by law, court costs, counsel fees, accounting, engineering and outside consulting fees, which Surety may sustain or incur or otherwise determine to pay in its sole and absolute discretion, by reason of: (a) a request for a Bond; (b) execution or procurement of a Bond, including any cost

incurred by Surety in fulfilling its obligations under any Bond; (c) the failure of lndemnitors to comply with any covenants or conditions of this Agreement or Other Agreement; or (d) in enforcing any of the covenants and conditions of this Agreement or Other Agreements…

Principal: individually and collectively, any one or more of the following named as principal on a Bond: (a) lndemnitors; (b) any subsidiaries, members, general partners, limited partners, joint venturers, or affiliates of any Indemnitors or Principal, whether now existing or formed hereafter, and whether partially or wholly owned, held or controlled by any Indemnitor or Principal, and (c) any other entity or person named at the request of any Indemnitor or Principal, including requests from their agents, brokers or producers; and, as to all of the foregoing, whether they act alone or with others (in joint venture, as members in limited liability companies, or otherwise) whether or not said others are named herein….

4. INDEMNITY: Indemnitors shall exonerate, hold harmless, indemnify, and keep Surety indemnified from all liability for Loss. Indemnitors shall pay Surety for Loss promptly upon demand. If Surety makes any Loss payment, Indemnitors agree that in any accounting between Surety and Principals, between Surety and Indemnitors, or either or both of them, Surety is entitled to recover from Indemnitors all disbursements made by it in good faith under the belief that it is or was or might be liable for the sums and amounts disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by Surety shall be prima facie evidence of the fact and amount of the liability to Surety….

5. COLLATERAL: Upon an Event of Default or determination by Surety that a potential Loss exists, Surety may demand that Indemnitors deposit a sum of money equal to an amount determined by Surety, or collateral security of a type and value satisfactory to Surety, to cover the Loss, whether or not Surety has: (a) established or increased any reserve; (b) made any Loss payment; or (c) received any notice of any claims therefor. At Surety's sole option, this collateral may be in addition to and not in lieu of any other collateral, and Surety may make multiple demands for collateral. Unless the Indemnitors and Surety agree otherwise in writing, Surety shall have the right to use any collateral or any part thereof in payment or settlement of any liabilities for which Indemnitors would be obliged to indemnify Surety and Surety shall have no obligation to invest or to provide a return on any collateral provided…

6. ASSIGNMENT: Indemnitors hereby assign, transfer, pledge and convey to Surety as collateral security for the full performance of this Agreement, Other Agreements, and the payment of any other indebtedness or liability to Surety, whether incurred in the past or the future, all right, title and interest in and growing

out of the following and the proceeds thereof: (a) All bonded contracts, bonded obligations, and Bonds, or growing in any manner out of such contracts, bonded obligations, and Bonds; (b) All subcontracts let or to be let in connection with any bonded contract, including any related surety bonds or other payment security; (c) All machinery, supplies, equipment, plant, tools and materials in which lndemnitors and/or Principals have an interest which are now or in the future may be on the site of any bonded contract or elsewhere, including materials purchased for or chargeable to any bonded contract, materials in the process of construction, in storage, or in transportation to any and all sites; (d) All actions, causes of actions, claims and demands whatsoever in connection with or on account of any bonded contract or obligation; (e) All retained percentages and funds due or which may become due on any bonded contracts and all other contracts whether bonded or not in which the lndemnitors have an interest; (0 All accounts and accounts receivable of the Principals, or any one of them; (g) All deposit accounts; (h) all chattel paper, paper, documents, instruments, inventory, and investment property as those terms are defined by the Uniform Commercial Code as adopted in the relevant state; (i) Tax refunds, claims for tax refunds, general intangibles; (j) All equity interests (including, without limitation, all shares and membership, limited partnership, general partnership, limited liability company interests, and any interest and rights in any joint venture, consortium, or teaming agreement), to the extent the Surety determines such interest is related to its obligations under Bonds; (k) Licenses, patents, copyrights and trade secrets, or a license (without cost to Surety) for the use of any of these, to the extent Surety determines, in its sole discretion, is required for fulfillment of its obligations under Bonds; (l) All warehouse receipts, bills of lading; (m) The proceeds of any insurance policy affording coverage for all or part of any Bond or bonded obligation. These assignments are effective on the date of each Bond or, in the case of any obligation of lndemnitors not related to a specific Bond or related to Bonds issued prior to the execution of this Agreement, on the effective date of this Agreement without limiting the right of Surety to claim under any prior assignment. The assignments shall be triggered only upon the occurrence of an Event of Default…

9. ADVANCES: Without any obligation to do so, Surety may guarantee loans, advance, or lend Indemnitor money for the purpose of a bonded contract or pursuant to any Other Agreement. All money expended, loaned, advanced, or loans guaranteed on behalf of any Indemnitor or Principal (including costs of investigation, administration, or for completion of any contract by the Surety) and all other costs and expenses incurred by the Surety in relation thereto, shall be presumed to be Loss for which Indemnitors shall be responsible notwithstanding any Indemnitor or Principal using all or part of the money for other purposes…

12. SETTLEMENTS: Surety shall have the right, at its option and sole discretion, to adjust, settle or compromise any claim, demand, suit or judgment upon any Bond…

12

30.     The 2017 GAI has not been terminated as to the Bonds.

31.     By virtue of the definitions and representations in each of the indemnity agreements, each of the Defendants is jointly and severally liable to Liberty as set forth herein.

32.     The 2002 GAI and the 2017 GAI are collectively referred to herein as the "GAIs."

**C.     Liberty's Concerns About Exposure, Receipt of Claims, and Collateral Demands**

33.     To date, Liberty has received payment bond claims on the Projects alleging that TCI failed to properly pay for labor and materials.  The claims currently total at least $1,154,723.

34.     Liberty is in the process of reviewing and analyzing the various claims and has requested certain information from Defendants regarding any defenses to the claims, and Defendants' intentions and ability to resolve the claims.  In light of these claims, Liberty is being exposed to the possibility of substantial losses under its Bonds, for which the Defendants are jointly and severally liable.

35.     Liberty requested, but did not receive, proof from Defendants that there were defenses to some of the claims.  As such, Liberty has paid the following claims to date:

ADA Project
- United Materials of Great Falls, Inc.:          $29,503.38

Mainstay Project
- Falls Mechanical Services:               $408,499.71
- United Materials of Great Falls, Inc.:      $265,951.89
- Malisani, Inc.                          $51,810.53

TOTAL                              $755,765.51

36.     Liberty has incurred attorney's fees, consultant fees, costs, and expenses in excess of $50,000 and expects to continue incurring attorney's fees, consultant fees, costs, and expenses on a near daily basis until this matter is resolved.

37.     In addition, Liberty understands that TCI entered into an agreement that resulted in Mr. Perry taking over and/or becoming President of TCI and other related rights and responsibilities for Mr. Talcott and Mr. Perry.  Liberty recently became aware that, as part of that transaction, there may be a $500,000 payment from either Mr. Talcott, James Talcott Construction or another entity to Aaron Perry or Talcott Construction, Inc.

38.     Such payment has been assigned to Liberty.

39.     Liberty has provided formal written notice of the assignment to Defendants.

40.     Likewise, Liberty recently became aware that, again without Liberty's knowledge or consent, TCI is apparently in negotiations to be (or has already been) purchased by a Jeffrey J. Nielsen and/or Nielsen Commercial, Inc. as potential successor-in-interest to TCI, whereby Mr. Perry and Mr. Nielsen intend to become majority owners of Nielsen Commercial, Inc.  The proposed Nielsen transaction constitutes a Change in Control of TCI, as that term is defined in Paragraph 1 of the 2017 GIA.

41.     Liberty is further concerned that TCI received funds on bonded contracts (specifically including, but not limited to, the Mainstay Project) and, in derogation of Liberty's rights, used such funds to pay non-bonded obligations.

42.     Liberty is concerned that TCI may have likewise intentionally failed to pay bonded obligations to service other debt and/or pay non-bonded obligations, again in derogation of Liberty's rights.

43.     Liberty is concerned that there will be a shortfall of funds available to TCI to complete the Mainstay Project and, as such, that Liberty will incur additional losses on that project.

44.    Liberty is also concerned that TCI and/or the indemnitors may be transferring or encumbering assets that could be used/liquidated to satisfy Liberty's bonded obligations, including, but not limited to properties owned or controlled entities in which Defendants own an interest, including the properties located at (and the equipment and materials contained within) 4401 and 4415 River Drive North, Great Falls, Montana 59405.

45.    In light of Liberty's receipt of the claims, the general lack of information received from Defendants regarding the payment bond claims, the potential change in control, and pursuant to the Change in Control provisions of the GAIs, Liberty demanded on June 26, 2019 that Liberty be discharged from the Bonds and all liability by reason thereof.  Liberty further demanded that Defendants deposit collateral with Liberty by placing Liberty in certified funds in the amount of $1.6MM no later than 5:00 p.m. MDT, Wednesday, July 3, 2019.

46.    Liberty did not obtain a discharge from the Bonds and has received no collateral.

47.    Since its payment of the claims, Liberty has repeatedly demanded that it be reimbursed for bond payments, attorney's fees, costs and expenses and otherwise protected from future losses, bond payments, attorney's fees, costs, and expenses.

48.    Liberty has not been so reimbursed or otherwise so protected.

49.    To date, Liberty stands exposed to no less than $1.6MM in exposure to losses related to the Bonds.

50.    Liberty has also incurred, and continues to incur, attorney's fees, consultant fees, costs, and expenses relating to its evaluation and administration of the aforementioned claims as well as its efforts to pursue reimbursement from the Defendants.

51.     Liberty will continue to incur attorney's fees, consultant fees, costs, and expenses related to the aforementioned claims, any additional claims, and pursuing claims against the Defendants in this matter.  Liberty may also incur additional payments, attorney's fees, consultant fees, costs, and expenses related to the Project to the extent appropriate.

52.     The Defendants have not placed Liberty in funds or other collateral to indemnify Liberty for its actual and anticipated losses related to the Bonds.

53.     All conditions precedent to bringing and maintaining this action have been met or have occurred.

### FIRST CLAIM FOR RELIEF
### (Breach of Express Contracts – All Defendants)

54.     Liberty hereby incorporates by reference all the allegations contained above as though fully set forth herein.

55.     The Defendants entered into valid and enforceable contracts, each of the GAIs, with Liberty.

56.     Sufficient consideration supports the GAIs.

57.     Liberty substantially performed its obligations under the GAIs.

58.     The Defendants failed to meet their obligations under the GAIs, which constitutes a material breach of the GAIs.

59.     Defendants' breach of the GAIs has damaged Liberty, and Defendants are jointly and severally liable to Liberty for all losses and expenses incurred by Liberty as a result of the issuance of the Bonds, including, but not limited to, bond payments, attorney's fees, consultant fees, expenses, and costs, all as provided by the terms of the GAIs.

## SECOND CLAIM FOR RELIEF
### (Common Law Indemnification against TCI)

60.    Liberty hereby incorporates by reference all the allegations contained above as though fully set forth herein.

61.    TCI, as the principal under the Bonds, is required to indemnify and hold Liberty harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorney and consultant fees, imposed upon, sustained or incurred by Liberty on account of the issuance of the Bonds.

62.    Liberty has made demand upon TCI to be indemnified and placed in funds for all losses sustained or to be sustained as a result of the issuance of the Bonds.

63.    TCI has failed to meet its obligations to Liberty under Montana law.

64.    TCI's failure to meet its obligations to Liberty under Montana law has damaged Liberty, and Liberty is entitled to damages.

## THIRD CLAIM FOR RELIEF
### (Injunctive Relief – Specific Performance against Defendants)

65.    Liberty hereby incorporates by reference the allegations contained above as though fully set forth herein.

66.    Pursuant to the GAIs, Defendants are required to place Liberty in sufficient funds to cover any and all losses or expenses, including attorney's and consultant's fees and costs, incurred or to be incurred by Liberty as a result of the issuance of the Bonds.

67.    There is no adequate remedy at law for Liberty to recover the benefit of the GAIs.

68.    Liberty has performed any obligations owed to Defendants under the GAIs and/or Bonds.

69.    Liberty requests specific performance on the provisions of the GAIs which require Defendants to place Liberty in sufficient funds to cover any possible liability or loss for which Defendants are or will be obligated to indemnify Liberty under the terms of the GAIs.

70.    If Defendants do not or cannot place Liberty in sufficient funds, Liberty requests an equitable lien in the amount of $1.6MM, plus attorney's fees, costs, and expenses ("Lien Amount") to be placed on the following real property:

- 215 3rd Street Northwest, Great Falls, Montana 59404, owned in whole or in part by Talcott Properties, LLC;

- 17 3rd Street Northwest, Great Falls, Montana 59404, owned in whole or in part by Talcott Properties, LLC;

- 3921 15th Avenue South, Great Falls, Montana 59405, owned in whole or in part by Autumn Perry;

- 4401 and 4415 River Drive North, Great Falls, Montana 59405, owned in whole or in part by Talcott Holdings, Inc.; and

- 2801 4th Avenue North, Great Falls, Montana 59401, owned in whole or in part by The Linda K. Caricaburu Living Trust Dated June 18, 2013.

71.    If Defendants do not or cannot place Liberty in sufficient funds, Liberty should also be given a valid equitable security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of Defendants in and to the following: accounts receivable, securities, rents, proceeds of sale, chattel paper, letters of credit, tax refunds, inventory and general intangibles; policies of insurance; and intellectual property.

## FOURTH CLAIM FOR RELIEF
### (Injunctive Relief – *Quia Timet* against Defendants)

72.    Liberty hereby incorporates by reference the allegations contained above, as though fully set forth herein.

73.     Under the equitable doctrine of *quia timet*, Liberty is entitled to have Defendants, jointly and severally, place funds or other security with Liberty sufficient to cover any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of the breach of the GAIs or a breach of other agreements, court costs, counsel fees, costs of investigation, accounting, engineering, construction management and any other outside consulting fees from and against any and all such losses, fees, costs and expenses, which Liberty may sustain or incur by reason or consequence of having issued the Bonds as set forth more fully above and in the GAIs.

74.     Despite demand, Defendants have failed to place Liberty in such funds in direct contravention of Liberty's *quia timet* rights.

75.     Pursuant to the terms of the Bonds, Liberty has guaranteed that if TCI fails to take certain actions, the underlying bonded obligation will become due, and Liberty will pay the debt.

76.     Unless Liberty obtains an Order establishing equitable liens, Liberty will not be adequately secured for its obligations under the Bonds.

77.     If Liberty is unable to obtain an Order requiring Defendants to place Liberty in collateral as requested in Liberty's demands, Liberty will be irreparably harmed.

78.     Liberty is without a plain, speedy, or adequate remedy at law, pecuniary compensation would not afford adequate relief, it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, and Liberty will be irreparably and permanently injured unless this Court grants the injunctive and equitable relief requested herein.

79.     Liberty is entitled to preliminary and permanent injunctive relief enforcing its *quia timet* rights and granting Liberty a valid equitable lien in the Lien Amount upon all assets and real property in which the Defendants have an interest, such liens to remain in place until Liberty has been placed in funds, and restraining each of Defendants from transferring, disposing, or otherwise liquidating any property owned by Defendants, real or personal, beyond reasonable living expenses, during the pendency of this matter.

80.     Specifically, Liberty requests equitable liens in the Lien Amount to be placed on the following real property:

- 215 3rd Street Northwest, Great Falls, Montana 59404, owned in whole or in part by Talcott Properties, LLC;

- 17 3rd Street Northwest, Great Falls, Montana 59404, owned in whole or in part by Talcott Properties, LLC;

- 3921 15th Avenue South, Great Falls, Montana 59405, owned in whole or in part by Autumn Perry;

- 4401 and 4415 River Drive North, Great Falls, Montana 59405, owned in whole or in part by Talcott Holdings, Inc.; and

- 2801 4th Avenue North, Great Falls, Montana 59401, owned in whole or in part by The Linda K. Caricaburu Living Trust Dated June 18, 2013.

81.     Liberty should also be given a valid equitable security interest in the Lien Amount on any and all rights, title and interest of Defendants in and to the following: Defendants' accounts receivable, securities, rents, proceeds of sale, chattel paper, letters of credit, tax refunds, inventory and general intangibles; policies of insurance; and intellectual property.

82.     Upon information and belief, Defendants have equity in the Property described above and/or have received and continue to receive income and/or other intangible benefits from the operation of TCI as a direct result of Liberty's issuance of the Bonds or other agreements.  The

interests of equity and fairness dictate that such equity, income and/or other intangible benefits be converted to equitable liens until Liberty is repaid.

### FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment – Equitable Liens against Defendants)

83.     Liberty hereby incorporates by reference the allegations contained above, as though fully set forth herein.

84.     Liberty conferred a benefit on Defendants by extending surety credit and/or issuing the Bonds on behalf of TCI.

85.     Defendants accepted and appreciated that benefit by profiting from TCI's operations, which would not have been possible without the issuance of Liberty's surety credit and/or the Bonds.

86.     Defendants further accepted and appreciated that benefit by virtue of the equity in their real and personal property as a direct result of these profits, which equity would not have been possible without the issuance of Liberty's surety credit and/or the Bonds.

87.     Defendants agreed to defend, indemnify, and post collateral with Liberty in exchange for and pursuant to the terms of the GAIs.

88.     By failing and refusing to do so, Defendants have been and will continue to be unjustly enriched by keeping funds or other collateral to which Liberty is entitled pursuant to the GAIs and/or common law.

89.     It would be inequitable for Defendants to retain the benefit of Liberty's surety credit and/or the Bonds without complying with their concomitant obligations under the GAIs and/or common law to post collateral as promised to protect Liberty from losses.

90.     Under these circumstances and given the surety relationship between Liberty and Defendants, general considerations of right and justice dictate that Liberty be granted the right to have Defendants' assets applied to their obligation to post collateral with Liberty.

91.     Specifically, Liberty seeks an equitable lien in the Lien Amount on the following real property, and any other property on which Liberty becomes aware:

- 215 3rd Street Northwest, Great Falls, Montana 59404, owned in whole or in part by Talcott Properties, LLC;

- 17 3rd Street Northwest, Great Falls, Montana 59404, owned in whole or in part by Talcott Properties, LLC;

- 3921 15th Avenue South, Great Falls, Montana 59405, owned in whole or in part by Autumn Perry;

- 4401 and 4415 River Drive North, Great Falls, Montana 59405, owned in whole or in part by Talcott Holdings, Inc.; and

- 2801 4th Avenue North, Great Falls, Montana 59401, owned in whole or in part by The Linda K. Caricaburu Living Trust Dated June 18, 2013.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Relief - Assignment against Defendants)

92.     Liberty incorporates by reference the allegations contained above, as though fully set forth herein.

93.     An actual and substantial dispute exists between Liberty and Defendants with respect to Liberty's right to be placed in funds and indemnified from loss under the Bonds.

94.     A prompt and judicial determination of the respective rights of the parties in these respects is necessary and appropriate.

95.     Pursuant to the GAIs, an Event of Default has occurred.

96.     As set forth in the GAIs, Defendants assigned certain rights to Liberty.

97.    Liberty seeks a declaratory judgment that any and all of the assignment provisions have been triggered and the assignments should be effectuated and enforced until such time that the Lien Amount is satisfied and such amount is paid in good funds to Liberty.

## IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, Liberty requests judgment against Defendants, jointly and severally, as follows and for such further relief as the Court deems proper:

- For all losses, expenses, costs and attorney's fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred by Liberty as a result of Defendants' breach of the GAIs, as well as specific performance of the same;

- For Defendants to indemnify and hold Liberty harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorney fees, imposed upon, sustained or incurred by Liberty on account of the issuance of the Bonds;

- Due to Defendants' failure or inability to place Liberty in sufficient funds, Liberty requests an equitable lien in the Lien Amount (including attorney's fees, costs, and expenses) to be placed on the following real property:

  - 215 3rd Street Northwest, Great Falls, Montana 59404, owned in whole or in part by Talcott Properties, LLC;

  - 17 3rd Street Northwest, Great Falls, Montana 59404, owned in whole or in part by Talcott Properties, LLC;

  - 3921 15th Avenue South, Great Falls, Montana 59405, owned in whole or in part by Autumn Perry;

  - 4401 and 4415 River Drive North, Great Falls, Montana 59405, owned in whole or in part by Talcott Holdings, Inc.; and

- 2801 4th Avenue North, Great Falls, Montana 59401, owned in whole or in part by The Linda K. Caricaburu Living Trust Dated June 18, 2013.

- Liberty requests a valid equitable security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of Defendants in and to the following: accounts receivable, securities, rents, proceeds of sale, chattel paper, letters of credit, tax refunds, inventory and general intangibles; policies of insurance; and intellectual property;

- For preliminary and permanent injunctive relief requiring Defendants to place Liberty in funds by money, property, liens or security interests in real or personal property, as determined by Liberty, and restraining each of them from transferring, disposing or otherwise liquidating any property, real or personal, beyond reasonable living expenses, during the pendency of this matter;

- For a security interest to be granted in favor of Liberty on any and all rights, title and interest of Defendants' accounts receivable, securities, rents, proceeds of sale, chattel paper, letters of credit, tax refunds, tax refunds, inventory and general intangibles; policies of insurance; intellectual property; and/or real property;

- For such further relief as the Court deems just and proper.

24

Respectfully submitted this 24th day of July, 2019.

THE HUSTEAD LAW FIRM
*A Professional Corporation*

*The Original Signature is on File at*
*The Hustead Law Firm, A Professional*
*Corporation*


*s/Patrick Q. Hustead*
Patrick Q. Hustead, Esq.
Connor L. Cantrell, Esq.
*Attorneys for Plaintiff*

Address of the Plaintiff:
175 Berkeley Street
Boston, Massachusetts 02116